UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NOBLE DRILLING SERVICES, INC. ET AL., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 4:09-cv-3074 |
| NOBLE DENTON MARINE, INC. ET AL., | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

Pending before the Court is Noble Denton Marine, Inc.'s Motion to Request Deferral to the London Arbitration Regarding Arbitrability (Doc. No. 16). After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that the Defendant's motion should be denied.

### I.  BACKGROUND

This maritime lawsuit arises from alleged property damage to Plaintiffs' drilling rig off the coast of Qatar, in the Persian Gulf.[1] Plaintiffs Noble Drilling Services, Inc. ("Noble Drilling"), Noble Asset Company Limited ("Noble Asset"), and Noble International Limited ("Noble International") are subsidiaries of Noble Corporation. Noble Corporation, though its subsidiaries (collectively "Noble Companies"), is an offshore drilling contractor for the oil and gas industry. Plaintiffs perform contract drilling services worldwide with a fleet of sixty-three mobile offshore drilling units. (Pls.' Original Compl., Doc. No. 1, ¶¶ 1, 11.) Defendant Denton Marine, Inc. ("Denton Marine") and its affiliates and subsidiaries ("Denton Affiliates"), including Defendants

---

[1] The Court pulls the background facts from Plaintiffs' Original Complaint (Doc. No. 1).

1

Noble Denton Consultants Limited ("Denton Consultants") and Noble Denton Middle East, WLL ("Denton Middle East"), provide services to the oil and gas industry, "including marine surveying, offshore rig moving services, and offshore rig placement and positioning services." (*Id.* ¶ 13.)

In December 2003, Noble Drilling entered into a Master Service Contract with Denton Marine ("2003 MSC") in Houston and Sugar Land, Texas. Plaintiff alleges that the parties entered into the 2003 MSC to govern the provision of services by Denton Marine and its subsidiaries and affiliated companies to the Noble Companies. (*Id.* ¶ 15.) Plaintiff further alleges that the 2003 MSC "expressly controls and governs all work performed by Denton Affiliates for any Noble Company." (*Id.*) The 2003 MSC provides that Denton Marine "shall perform, or cause to be performed, all work or services performed by any of the [Denton Affiliates] for any of the Noble Companies in a good and workmanlike manner, using competent and experienced workmen and supervisors in accordance with good oil field practices." (Noble Drilling Services Inc. Master Service Contract, Doc. No. 1, Ex. A, ¶ 2.3.) Plaintiffs contend that, since the execution of the 2003 MSC, Denton Middle East and Denton Consulting have had more than one hundred separate transactions with Noble Companies.

Noble Asset owns the offshore drilling rig at the center of the dispute here. The Noble David Tinsley ("Rig") is a self-contained drilling rig known as a "jack up rig." The Rig consists of a floating barge with three support legs that can be raised or lowered. The Rig is towed to a drilling site, and the support legs are then lowered to the ocean floor to hold the Rig. It is then elevated, or "jacked up," on the legs to stabilize the Rig

2

and conduct operations. (*Id.* ¶ 23.) A process known as "preloading" is used to position the Rig's legs on the seabed at a drilling site.

In March 2009, Noble International hired Denton Middle East to supervise the move of the Rig from a shipyard in Sharjah, United Arab Emirates, to a location in the Al Shaheen Field, offshore Qatar, to be placed adjacent to an offshore platform owned and operated by Maersk Oil Qatar ("Site"). In connection with this project, Denton Affiliates were responsible for conducting "footing penetration analyses," which analyze seabed conditions. The Denton Affiliates were also to provide a marine surveyor/rig mover "to direct and control the move from Sharjah to the Site and to direct and control the preloading procedures." (*Id.* ¶ 30.) The Plaintiffs allege that this project was governed by the 2003 MSC. (*Id.* ¶¶ 28-29.)

The Rig arrived at the Site on May 7, 2009, and began preloading operations under the direction of Captain Moran, the marine surveyor and rig mover supplied by Denton Middle East. Plaintiffs allege that the preload procedures directed by Captain Moran were not in accordance with the footing penetration analysis conducted by Denton Consultants, the rig move procedures and certificate of approval prepared by Denton Middle East, or applicable good and workmanlike standards and practices for the conditions at the Site. During preload operations, the Rig's support legs were not able to stabilize on the sea floor. Plaintiffs allege the Rig was extensively damaged. The three legs completely sheared and had to be abandoned on the sea floor to free the Rig. The hull itself also sustained damage. The Rig was then moved to the Hamrijah shipyard in the United Arab Emirates for damage assessment and repairs. Plaintiffs contend that the cost to recover, salvage, transport, and repair the Rig is expected to exceed $35 million.

3

(*Id.* ¶¶ 38-41.)  Subsequently, Plaintiffs filed suit in this Court, asserting breach of contract, breach of warranty, and negligence claims.  (*Id.* ¶¶ 42-59.)

Defendant Denton Middle East disputes that the 2003 MSC governed the terms of the Rig's move.  Denton Middle East instead believes that any contract incorporated its "Conditions of Business," printed on the reverse of two order acknowledgment forms sent by Denton Middle East to Noble International, which provide that all claims and disputes exclusively be determined in London under the Rules of the London Maritime Arbitrators Association, and be governed by English law.  Defendant Denton Consultants, being sued for its role in preparing the footing penetration analyses, argues that its work is also governed by the "Conditions of Business," and thus requires London arbitration.  (Noble Denton Marine, Inc.'s Mot. to Request Deferral to the London Arbitration Regarding Arbitrability, Doc. No. 16, at 5.)

Denton Middle East and Denton Consultants have initiated arbitration proceedings in London.  They requested that Plaintiff Noble International agree to the appointment of an arbitrator.  When Noble International refused, Denton Middle East and Denton Consultants applied to the British High Court for such an appointment to be made.  (*Id.*)

Defendant Denton Marine now asks this Court to abate its proceedings to allow the London arbitration to proceed on the question of arbitrability.

## II. ANALYSIS

Denton Marine does not seek a ruling from this Court on the merits of any arbitrability or other question, but merely asks this Court to suspend its own jurisdiction while a foreign proceeding determines whether this dispute is subject to arbitration.

4

Denton Marine argues that it would not be an efficient use of resources for both this court and the London arbitration to "proceed on parallel tracks to determine the question of whether an agreement to arbitrate existed." (Doc. No. 16, at 8.) Denton Marine argues further that, allowing both fora to proceed on the question of arbitrability presents the inherent danger of inconsistent rulings on that question. Denton Marine believes that either this Court or the London arbitration, but not both, should determine the arbitrability of this dispute, and recommends that this Court allow the London arbitration to proceed on that question.

Plaintiffs respond that Denton Marine has "wholly failed to meet its burden for the relief it seeks." (Pls.' Resp. to Noble Denton Marine, Inc.'s Reply Regarding Request for Deferral to the London Arbitration Regarding Arbitrability, Doc. No. 22, at 5.) They argue that a court's decision to abstain from exercising jurisdiction is the exception, not the rule, and any such decision must be guided by consideration of specific factors that Denton Marine has failed to analyze. (*Id.*)

The Court agrees with Plaintiffs. As an initial matter, the Court questions whether Denton Marine may appropriately bring this motion before the Court. Denton Marine is a non-signatory to any alleged arbitration agreement between Noble International and Denton Middle East, but nonetheless argues that it has standing to seek enforcement of the arbitration agreement "pursuant to equitable theories," because Noble International seeks to collect damages from Denton Marine based upon alleged defective performance of the contract between Noble International and Denton Middle East. Denton Marine fails, however, to set forth the basis for any equitable theory on which it may bring this motion. In addition, from what the Court understands, Denton Marine has

5

not been involved in the London arbitration proceedings at all. The two other Defendants, Denton Middle East and Denton Consultants, appear to be the only two parties who have attempted to initiate arbitration proceedings in London. That Denton Marine has chosen to file this motion, then, is all the more curious to the Court. The only reason the Court can surmise for the unusual posture of this motion is the following: Denton Marine does not contest personal jurisdiction in this Court, whereas Denton Middle East and Denton Consultants have each filed motions to dismiss for lack of personal jurisdiction.

Luckily, however, the Court need not speculate about whether Denton Marine is the appropriate party to bring this motion, because the motion to defer fails for another reason. Denton Marine does not provide legal reasoning and case citations in support of its suggestion that this Court abstain from exercising its jurisdiction in this case, and the Court can see no sound reason to do so. (Doc. No. 22, at 5.)

Federal courts have a "'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." *Finova Capital Corp. v. Ryan Helicopters USA*, 180 F.3d 896, 898 (7th Cir. 1999) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "The basic notion" underlying what has come to be known as the *Colorado River* doctrine "is that in certain circumstances it may be appropriate for a federal court to refrain from exercising its jurisdiction to avoid duplicative litigation." *Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000) (quoting *Colorado River*, 424 U.S. at 817-19). Although most courts consider abstention in the context of parallel state court proceedings, several courts have used the *Colorado River* abstention framework when deciding whether to abstain from exercising

6

jurisdiction in the face of parallel foreign proceedings. *See Finova Capital*, 180 F.3d at 898 ("Nevertheless, in the interests of international comity, we apply the same general [*Colorado River*] principles with respect to parallel proceedings in a foreign court."); *Al-Abood*, 217 F.3d at 232. The threshold question in that analysis involves a determination of whether the two suits are actually "parallel," which happens when "'substantially the same parties litigate substantially the same issues in different forums.'" *Al-Abood*, 217 F.3d at 232 (quoting *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991)). If the suits are considered parallel, courts will then carefully balance several factors, including, *inter alia*, the order the suits were filed, the relative inconvenience of the federal forum, the source of law in the case, and the progress of the two proceedings. *Al-Abood*, 217 F.3d at 232.

On the threshold question, it is plain to this Court that the two suits are not parallel. The issues involved in the two cases are different. The litigation pending in this Court seeks a merits determination on breach of contract, warranty, and negligence claims arising out of the Rig damage discussed above. By contrast, the London arbitration, at this stage, deals with a very narrow question—whether an agreement to arbitrate existed between Noble International on the one hand, and Denton Middle East and Denton Consultants on the other. In addition, the parties involved in the two proceedings are not substantially the same. The London arbitration appears to involve just three parties—Noble International, Denton Middle East, and Denton Consultants—while the instant litigation involves a total of six parties. Thus, the Court finds that the proceedings are not parallel. It is thus not appropriate for the Court to retreat from its unflagging obligation to exercise its jurisdiction in this case.

Even if the suits were parallel, Denton Marine has offered no analysis as to how this Court should balance the specific factors outlined above.  At a quick glance, it appears that these factors would also counsel against abstention.  The instant suit was filed before Denton Middle East and Denton Consultants commenced the London arbitration proceedings, and although those two Defendants contest this Court's personal jurisdiction, Denton Marine, who has filed this motion, does not discuss any inconvenience regarding this federal forum.  Further, it appears to the Court that the London arbitration proceedings have not officially begun.  The initial hearing is to take place later this month.

This Court is aware that, in the context of parallel foreign proceedings, it should be guided by the "principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency."  *Royan & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, (2d Cir. 2006).  Denton Marine fails to explain how, and this Court does not believe, those factors apply here.

In the context of dismissal of a suit on international comity grounds, the Fifth Circuit has stated that dismissal is "sometimes [] appropriate . . . when allowing a case to proceed in the United States would intrude on the interests of a foreign government." *Perforaciones Exploración y Producción v. Marítimas Mexicanas, SA de CV*, 2009 WL 4666959, at *4 (5th Cir. Dec. 9, 2009).  This case deals not with dismissal, of course, but with abstention.  Nevertheless, the Court does not believe that exercising jurisdiction in this case will impede the United Kingdom's sovereign rights in any way, as this appears to be a straightforward private dispute.

8

The Court would like to make one last observation. As to the question of why Denton Middle East and Denton Consultants have commenced arbitration proceedings in London, Denton Marine answers that the activities in question have a nexus with England. Denton Marine appears not to dispute, however, that this Court properly possess subject matter jurisdiction over the case. Therefore, in the Court's view, the only plausible reason that Defendants commenced proceedings London is because Denton Middle East's "Conditions of Business" provided that any dispute was to be arbitrated in London, under English law. If that is the reason Defendants have gone to London, then what they are actually asking of this Court is, in effect, an agreed stay and an order to compel arbitration. This the Court will not do. Until the Court has resolved for itself the merits of the arbitrability of this dispute, it will not order or assent to a disputed arbitration.

### III. CONCLUSION

This Court cannot identify any exceptional circumstances that support abstention. Denton Marine's Motion to Request Deferral to the London Arbitration Regarding Arbitrability (Doc. No. 16) is **DENIED**. Any motion to compel arbitration may be filed in this Court; otherwise, the case will proceed as normal.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 4th day of May, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**